UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Brittany R. Tovar,

                      Plaintiff,

v.                                        Civ. No. 16-100 (RHK/LIB)
                                      **MEMORANDUM OPINION AND ORDER**

Essentia Health, Innovis Health, LLC,
d/b/a Essentia Health West, and
HealthPartners, Inc.,

                      Defendants.
_____

Christy L. Hall, Jill R. Gaulding, Lisa C. Stratton, Gender Justice, St. Paul, Minnesota, for Plaintiff.

Lisa Edison-Smith, Vanessa Anderson, Vogel Law Firm, Fargo, North Dakota, for Defendants Essentia Health and Innovis Health, LLC d/b/a Essentia Health West.

David M. Wilk, Stephanie L. Chandler, Larson King, LLP, St. Paul, Minnesota, for Defendant HealthPartners, Inc.

## INTRODUCTION

Plaintiff Brittany Tovar commenced this action after her son, a beneficiary under her employer-sponsored health insurance policy, was denied coverage for gender reassignment services and surgery. She alleges her employer, Defendants Essentia Health and Innovis Health, LLC, d/b/a Essentia Health West (collectively, "Essentia"),[1] violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"),

---

[1] Defendant HealthPartners, Inc. contends that Tovar actually is employed only by Innovis Health, LLC. (HealthPartners Mem. at 2 n.2.) Essentia does not join in this argument and the Court will not address it at this time.

and the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.* ("MHRA"), by excluding coverage for gender reassignment services or surgery in Essentia's employee medical plan. She also alleges Defendant HealthPartners, Inc. ("HealthPartners") violated Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 ("ACA"), by administering Essentia's plan and enforcing the exclusion. Defendants move to dismiss Tovar's claims; for the reasons that follow, their Motions will be granted.

## BACKGROUND

Tovar is a nurse practitioner employed by Essentia since 2010. (Compl. ¶ 21.) As part of her employee benefits, she is provided health insurance through the Essentia Health Employee Medical Plan (the "Plan"), which is sponsored by Essentia and administered by HealthPartners.[2] (Id. ¶¶ 7, 22–24.) In late 2014, Tovar's teenage son became a beneficiary under the Plan and was subsequently diagnosed with gender dysphoria.[3] (Id. ¶¶ 26–27.)

At issue in this case is the 2015 version of the Plan (the "2015 Plan"), which barred coverage for "services and/or surgery for gender reassignment." (Id. ¶ 25; see also Bunde Decl. Ex. A[4] at 51.) Due to this exclusion, Tovar's son was denied coverage for

---

[2] HealthPartners contends it is incorrectly named as a defendant and, instead, asserts that HealthPartners Administrators, Inc. is the third-party administrator for the Plan. This issue is discussed below.

[3] This condition occurs when an individual's gender identity differs from the gender assigned at birth, which is also known as being "transgender." (Compl. ¶¶ 27–28.) It appears that Tovar's son was assigned the female gender at birth but now identifies as male.

[4] The parties agree this exhibit—the 2015 Plan—is "necessarily embraced" by, and does not contradict, the Complaint; as such, the Court will consider it on this Motion to Dismiss. (Mem.

certain medications and gender reassignment surgery that were deemed medically necessary by his doctors. (Compl. ¶¶ 30–31.) Tovar's Complaint cites three specific incidents where her son was denied coverage:

1. In 2015, he was prescribed the drug Lupron, which is recommended for treatment of symptoms associated with dysmenorrhea (painful menstruation) and can temporarily suspend menstruation; the latter being why Tovar's son was prescribed the drug. (Id. ¶¶ 35–37.) But because the 2015 Plan excluded services for gender reassignment, the Lupron prescription was not covered and would have cost approximately $9,000. (Id. ¶¶ 38, 40.) Tovar was unable to afford this and her son did not receive Lupron. (Id. ¶ 40.)

2. Tovar's son was also prescribed Androderm, a form of testosterone, to treat his gender dysphoria. (Id. ¶ 42.) Coverage also was denied for this prescription because the medicine was "for use by males only" and was "not covered for patient gender." (Id. ¶ 43.) However, Tovar did pay out-of-pocket for this prescription and "Essentia later agreed" to cover the medicine as a one-time exception. (Id. ¶¶ 44–45.)

3. In December 2015, Tovar contacted HealthPartners seeking pre-authorization for gender reassignment surgery for her son; she was notified it would not be authorized because of the exclusion in the 2015 Plan. (Id. ¶ 46.)

---

in Opp'n to HealthPartners at 3 n.2 (citing Minn. Majority v. Mansky, 708 F.3d 1051, 1056 (8th Cir. 2013)).)


Tovar alleges that, because her son was unable to obtain these necessary medical services, she suffered from stress, worry, anger, disappointment, and sleeplessness, experienced an increase in migraines, and ultimately reduced her hours at work. (Id. ¶¶ 41, 48.)

Effective January 1, 2016, the Plan was amended (the "2016 Plan") and the exclusion for gender-reassignment services and surgery was removed. (Bunde Decl. Ex. E at Amendment.) The 2016 Plan remains self-insured and sponsored by Essentia. (Id. at 22–23.)

Tovar commenced this action on January 15, 2016, alleging sex discrimination against Essentia in violation of Title VII and the MHRA (Counts I and II, respectively) and against HealthPartners in violation of the ACA (Count III). For the economical and emotional harm she allegedly suffered due to this "discrimination," she seeks compensatory damages, as well as declaratory and injunctive relief.

HealthPartners now moves to dismiss for lack of subject-matter jurisdiction and Essentia moves to dismiss for failure to state a claim. Defendants raise two issues with Tovar's Complaint. HealthPartners argues Tovar does not have standing to assert her claims against it because a separate entity, HealthPartners Administrators, Inc. ("HPAI"), is actually the third-party administrator ("TPA") of Essentia's self-insured Plan. Essentia argues that Tovar lacks statutory standing and thus fails to state a claim upon which relief can be granted. The Motions have been fully briefed, the Court heard oral argument on April 14, 2016, and the Motions are ripe for disposition.

**I.     Subject-matter jurisdiction (Rule 12(b)(1))**

   **a.     Standard of decision**

It is a plaintiff's burden to establish that jurisdiction exists. Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. There are two methods of challenging whether subject-matter jurisdiction exists: a facial attack, which challenges the plaintiff's allegations within the Complaint, Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520-21 (8th Cir. 2007), and a factual attack, which looks to matters beyond the pleadings to resolve facts and determine jurisdiction, Osborn, 918 F.2d at 729 n.6. Here, HealthPartners has mounted a factual attack because its argument is based on matters outside the pleadings, namely, the 2015 Plan (Bunde Decl. Ex. A) and the 2016 Plan (id. Ex. E).

   **b.     Analysis**

HealthPartners argues Tovar does not have standing to sue it because her injuries are not "fairly traceable" to its conduct; the TPA of the 2015 Plan is actually HPAI. (HealthPartners Mem. at 2 n.1.) The 2015 Plan, which Tovar agrees is properly before the Court, explicitly lists HPAI as the TPA. (See Bunde Decl. Ex. A. at 22–23.) The 2016 Plan states the same. (Id. Ex. E at 22–23.)

This highlights why Tovar's third count against HealthPartners fails for lack of standing. She alleges that HealthPartners discriminated against her in violation of the

ACA[5] "by serving as the [TPA] for the Essentia Health Employee Medical Plan and enforcing the Plan's discriminatory exclusion of any 'services and/or surgery for gender reassignment.'" (Compl. ¶ 63.) But, HealthPartners plainly was not the administrator of either the 2015 or 2016 Plan. The parties agree that to satisfy Article III's standing requirements, Tovar must show (1) she has suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is *fairly traceable* to the challenged action of the defendant; and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. McClain v. Am. Econ. Ins. Co., 424 F.3d 728, 731 (8th Cir. 2005). Not only is Tovar's alleged injury not fairly traceable to HealthPartners, but HealthPartners is also unable to provide her redress.[6]  See Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs., 801

---

[5] Section 1557 of the ACA provides, in relevant part:

> An individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29 [section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794)], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance.

42 U.S.C. § 18116(a).

[6] It is important to note that HealthPartners and HPAI are separate legal entities. The Department of Health and Human Services ("HHS") has promulgated proposed rules that shed light on the significance of this distinction. "Where an entity that acts as a [TPA] for an employer's employee health benefit plan is legally separate from an issuer that receives Federal financial assistance for its insurance plans, [HHS] will engage in a case-by-case inquiry to evaluate whether [the TPA] is appropriately subject to Section 1557." See Nondiscrimination in Health Programs and Activities, 80 Fed. Reg. 54,172, 54,189 n.73 (Sept. 8, 2015) (to be codified at 45 C.F.R. pt. 92). Tovar has alleged that HealthPartners receives federal financial assistance (Compl. ¶¶ 12–13), but she still cannot overcome the fact that Defendant HealthPartners is neither the TPA nor the plan sponsor, and as such, has no relation to this case.

F.3d 927, 934 n.6 (8th Cir. 2015) ("A self-insured employer bears the financial risk of paying its employees' health-insurance claims.").

Even if HealthPartners was involved in administering the Plan, Tovar's claims against it would still fail. First, regardless of whether the exclusion is itself discriminatory (as Tovar argues it is), HealthPartners would have fiduciary duties under ERISA to follow the terms of the Plan or be subject to legal action, 29 U.S.C. § 1104(a)(1)(D); and it was *Essentia* that decided on those terms (see Bunde Aff. Ex. A at 22–23). Second, HealthPartners points out that yet another way to impose liability on it would be to allege that it had some control over what coverage was provided. See Williams v. Grimes Aerospace Co., 988 F. Supp. 925, 935–36 (D.S.C. 1997) ("liability hinges on who is in control" and if both defendants exhibit control, each may be liable). But, HealthPartners continues, even this argument would fail because the 2015 Plan states *Essentia* retained "all powers and discretion to . . . change the Plan." (Bunde Aff. Ex. A at 23). Third, Tovar alleges that the 2015 Plan itself is discriminatory, yet has not sued the Plan. Instead, she sued HealthPartners, but alleged no discriminatory action it took in administering the Plan, which would have been sufficient to state an ACA claim. See Callum v. CVS Health Corp., --- F. Supp. 3d ---, 2015 WL 5782077, at *22–23 (D.S.C. 2015) (plaintiff stated ACA claim where CVS denied him the right to have his prescriptions filled at CVS pharmacies because of his race and disability); Rumble v. Fairview Health Serv., Civ. No. 14-2037, 2015 WL 1197415, at *15–16 (D. Minn. March 16, 2015) (Nelson, J.) (transgender plaintiff stated claim where emergency room doctor denied him medical care he was entitled to as a patient due to his gender identity).

Finally, Tovar does not allege that HealthPartners gave her a different plan or fewer benefits *because* she had a transgender child, which would clearly be discrimination under the ACA.  See Se. Pa. Transp. Auth. v. Gilead Scis., Inc., 102 F. Supp. 3d 688, 700 (E.D. Pa. 2015) (suggesting what facts might sufficiently allege discrimination under the ACA).

Accordingly, Tovar's ACA claim fails because HealthPartners is an improper party to this action and her alleged injury is not traceable to it or redressable by it.[7]  See Reid v. BCBSM, Inc., 984 F. Supp. 2d 949, 955 n.6 (D. Minn. 2013) (Kyle, J.) (plaintiff failed to state a claim under the ADA because she did not allege facts to indicate that the *review* of the insurance plan was discriminatory, only that the *plan* was discriminatory); Ark. ACORN Fair Hous., Inc. v. Greystone Dev., Ltd. Co., 160 F.3d 433, 434–35 (8th Cir. 1998) ("[T]he injury must also be traceable to some act of the *defendant*.") (emphasis added).  As such, Count III will be dismissed without prejudice.[8]

## II.   Failure to state a claim (Rule 12(b)(6))

### a.   Standard of decision

To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547

---

[7] HealthPartners also argues Tovar's ACA claim is moot because the exclusion at issue in the 2015 Plan was removed from the 2016 Plan *before* Tovar commenced this action.  (Compare Bunde Decl. Ex. A at 51 with id. Ex. E at Amendment.)  The Court agrees but dismisses this claim on other grounds.

[8] Tovar asserts that "if discovery reveals that [HPAI] should be . . . substituted for HealthPartners, Inc., [she] will seek to amend her Complaint accordingly."  (Mem. in Opp'n to HealthPartners at 3 n.4.)  Tovar agrees that the 2015 Plan is properly before the Court, and it establishes that HPAI is the TPA.  Tovar did not, and has not, amended her Complaint, even though she is free to seek leave to do so.  See Fed. R. Civ. P. 15(a).

(2007).  A "formulaic recitation of the elements of a cause of action" will not suffice.  Id. at 555.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions."  Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556).  The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff.  Twombly, 550 U.S. at 554-56.  A complaint should not be dismissed simply because the Court is doubtful the plaintiff will be able to prove all of the necessary factual allegations.  Id. at 556.  Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears that recovery is very remote and unlikely.  Id.  "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

     **b.**    **Analysis**

Essentia argues Tovar has failed to state a claim upon which relief can be granted because she lacks statutory standing.  Statutory standing is a doctrine employed by courts to avoid jurisdiction when Article III otherwise permits suit.  In Lexmark International, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1388 (2014), the Supreme Court discouraged the use of such prudential standing theories, noting courts should not

9

foreclose a cause of action created by Congress merely because "prudence dictates." Instead, concepts of statutory interpretation should be used to determine whether a plaintiff falls within the individuals the statute intended to protect, otherwise known as the "zone of interests." Id. Finding that a plaintiff does not fall within the zone of interests is effectively the same as failing to state a claim. Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 320 (3d Cir. 2015) ("statutory standing is not jurisdictional") (citing Lexmark Int'l, Inc., 134 S. Ct. at 1388 & n.4). As such, this Court will address whether Tovar falls within the zone of interests sought to be protected by Title VII and the MHRA and hence whether she has stated a claim to relief.

Tovar alleges her emotional and economical harms were caused by Essentia's incorporation of the exclusion in the 2015 Plan in violation of Title VII and the MHRA. Under Title VII, an employer is prohibited from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). Title VII provides that "a civil action may be brought . . . by the person claiming to be aggrieved." 42 U.S.C. § 2000e–5(f)(1); Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 177 (2011) (stating the term "aggrieved" is construed more narrowly than Article III).

Similarly, the MHRA makes it unlawful for an employer, because of sex, to discriminate against a person with respect to terms, conditions, or privileges of employment. Minn. Stat. § 363A.08, subd. 2(3). The MHRA states that "[a]ny person aggrieved by a violation of this chapter may" sue. Minn. Stat. § 363A.28, subd. 1. A party is "aggrieved" if "she has suffered the denial or infringement of a legal right."

Krueger v. Zeman Constr. Co., 781 N.W.2d 858, 862 (Minn. 2010).  For purposes of this Motion, the Court will apply the same analysis to both the Title VII and MHRA claims.  See, e.g., Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (*en banc*); Johnson v. City of Blaine, 970 F. Supp. 2d 893, 914 (D. Minn. 2013) (Davis, C.J.).

Essentia contends, and Tovar agrees, that a person is "aggrieved" if she falls within the zone of interests; that is, "to protect *employees* from their *employers*' unlawful actions" in the workplace.  See, e.g., Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1068 (8th Cir. 2005) ("Title VII prohibits an employer from discriminating against an employee based on the employee's sex.") (citing 42 U.S.C. § 2000e–2(a)(1)); Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 323 (1980) ("Title VII protects all employees of and applicants for employment with a covered employer . . . against discrimination based on . . . sex.").  Essentia argues that only an *employee* is protected from discrimination and can bring a claim.  There is no dispute that Tovar is an employee and her son is not. Accordingly, Tovar must be the individual to have suffered the discrimination—and this is where her claim falters.  Essentia argues that Tovar is not an aggrieved person because she does not allege that she, as the employee, was discriminated against based on *her* sex or gender identity.

It is difficult to discern the precise contours of Tovar's argument in response because she makes legal conclusions and cites case law distinguishable from her position, in which plaintiff-employees were directly discriminated against and brought successful claims.  (See Mem. in Opp'n to Essentia at 11–13.)  What is clear is her insistence that she is an aggrieved person because, as she concludes, she has suffered harm from

11

discrimination based on (someone's) sex simply by the exclusion being in her Plan. (See id. at 2 ("She was prevented from fully utilizing [her] benefits, and the basis on which Essentia denied her access was sex."); see also id. at 9–10; Compl. ¶¶ 19, 53 ("Essentia violated Title VII's bar on sex discrimination" by having the exclusion in the 2015 Plan).) But, this is simply insufficient to state a claim of discrimination.

Regardless of whether the exclusion discriminates against transgender individuals, Tovar's allegation that this exclusion was "absolutely [] used against [her]" in violation of Title VII and the MHRA is unsupported by the facts alleged in the Complaint. (Mem. in Opp'n to Essentia at 10.) There are no allegations that Tovar herself is transgender or was denied health benefits by either Essentia or HealthPartners, let alone denied benefits because of her sex. Instead, she assumes the discrimination against her transgender son was also discrimination against her. This assumption confuses the true target because it was not Tovar who was discriminated against; it was her son (a non-employee and non-party) who was the sole object of the discrimination. This does not support a claim of discrimination. See, e.g., Jackson v. Deen, 959 F. Supp. 2d 1346, 1355 (S.D. Ga. 2013) (plaintiff-employee's claims fail because she did not allege *she* was the target of the discrimination); Thompson, 562 U.S. at 178 (plaintiff-employee suffered discriminatory action based on *his* protected status as an employee and was not "an accidental victim of the retaliation"); Krueger, 781 N.W.2d at 864 (plaintiff-employee may sue under MHRA only if the employer discriminated against *her*); Niemeier v. Tri-State Fire Prot. Dist., Civ. No. 99-7391, 2000 WL 1222207, at *4 (N.D. Ill. Aug. 24, 2000) (plaintiff-employee did not have standing to sue under ADA based on discrimination suffered by his non-

employee wife who was a beneficiary under his insurance plan); Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C., 462 U.S. 669, 672 (1983) (discrepancies between pregnancy-related hospitalization benefits offered to male and female employees discriminated against male employees because of *their sex*, not their wives' sex).

To show she has suffered discrimination, Tovar analogizes her situation to that in Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc., 173 F.3d 988 (6th Cir. 1999). In Tetro, a Caucasian man sued his former employer, alleging he was discriminated against because he had a biracial child. Id. at 994. The court found Tetro did state a claim of racial discrimination, "even though the root animus for the discrimination was prejudice against the biracial child," because the employer targeted the plaintiff-employee with its discriminatory conduct, culminating in his discharge. Id.

Here, Tovar has alleged no similar discriminatory conduct or adverse action taken by Essentia against her. Instead, she argues "she is entitled to the full enjoyment of the privileges of her employment, including access to and use of her health care benefits equal to that of other employees." (Mem. in Opp'n to Essentia at 13–14.) Yet, there are no facts in the Complaint to support that she was ever personally denied the benefits or privileges of her employment or personally experienced anything less than full coverage of the benefits provided. At oral argument, Tovar continued to make these same public policy arguments in support of how she has been injured: that a facially discriminatory health plan restricts people from freely choosing their employment and discriminatorily impacts employees' conditions of employment. (See Doc. No. 21, Mot. Hr'g Tr. at 21–25.) The Court is unpersuaded—not only are policy arguments better addressed to the

legislature, but the generalized grievance asserted here is insufficient to confer standing. See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[W]hen the harm asserted is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.").

While the Court must take as true the fact that Tovar has been injured emotionally and financially, these purported injuries are *effects* of the discrimination her *son* allegedly endured based on his sex. In Glass v. Hillsboro School District 1J, 142 F. Supp. 2d 1286, 1288 (D. Or. 2001), the court granted the defendant's motion to dismiss the plaintiff-parents' Americans with Disabilities Act ("ADA") claim because the parents did not allege they suffered separate and independent injuries sufficient to state a claim of discrimination. The court drew a distinction between ancillary-economic/derivative injuries and direct-discriminatory injuries. Glass, 142 F. Supp. 2d at 1289–90. The former injuries were expenditures incurred by the plaintiffs to secure services for their child, while the latter were injuries suffered by their disabled child for being denied medical services. Id. The court held that only the infliction of the latter injury was sufficient to state a discrimination claim under the ADA. Id.

The same failures in Glass also appear here and the same result is warranted. Tovar has not alleged that Essentia's actions discriminated against her and caused her direct injuries; like Glass, she has suffered no discrimination or injury just because her son was the object of discriminatory conduct. See id. at 1290. Tovar sought no service under the 2015 Plan and was not denied any benefit to which she was entitled. See id. at 1291–92. And, applying Glass's injury-distinction here, Tovar's emotional distress

14

and economic difficulties are not separate and direct injuries sufficient to state a claim of discrimination. See id. at 1290–92; see also Niemeier, 2000 WL 1222207, at *4 (husband's emotional injury resulting from alleged discrimination to wife was not a "separate and distinct injury caused by [defendant's] actions" and was insufficient to state claim under the ADA).

Tovar further attempts to distinguish her situation from that in Pierzynowski v. Police Dep't City of Detroit, 941 F. Supp. 633, 640 (E.D. Mich. 1996), claiming "[s]he is not merely a third-party bystander." (Mem. in Opp'n to HealthPartners at 26.) But, in the Court's view, this is another case that actually cuts against Tovar. In Pierzynowski, the defendant's wife and two other family members sued the Police Department under § 1983, asserting injuries for mental anguish, humiliation, embarrassment, and personal injury requiring medical treatment, as a result of the defendant's acquittal following his arrest and prosecution. Id. at 640–41. The family members did not aver that any of their own constitutional rights had been violated and the court found the family members lacked standing and dismissed their claims. Id. (stating wife's injury "relate[d] to" to the prosecution of her husband).

Tovar argues her situation is different; she was a covered party under the 2015 Plan and "the benefits she received *through her beneficiary son* were lacking because of the discrimination." (Mem. in Opp'n to HealthPartners at 26 (emphasis added).) However, the Court finds Pierzynowski analogous to the facts of the case at hand. The three family-member plaintiffs in Pierzynowski claimed indirect injuries suffered vicariously through the alleged constitutional violations committed against the defendant.

15

941 F. Supp. at 640. The court reasoned that "[i]f the constitutional rights of one family member are violated, this does not confer standing on other family members." Id. Here, Tovar also claims her injuries are "due to" her son being denied medical care. (Compl. ¶ 48.) The Court finds Tovar's alleged injuries are similarly vicarious in nature and do not make her an aggrieved person under the law. Therefore, Counts I and II will be dismissed for failure to state a claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Essentia's Motion to Dismiss (Doc. No. 10) and HealthPartners' Motion to Dismiss (Doc. No. 12) are **GRANTED**; Counts I and II of Tovar's Complaint (Doc. No. 1) are **DISMISSED WITH PREJUDICE**, and Count III is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: May 11, 2016                             s/Richard H. Kyle
                                                RICHARD H. KYLE
                                                United States District Judge